IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01048-DDD-SKC

COY L. DANIELS,

    Plaintiff,

v.

NATIONAL CREDIT SYSTEMS, INC., and
EQUIFAX INFORMATION SYSTEMS, LLC,

    Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

---

NOW comes Plaintiff, COY L. DANIELS ("Plaintiff"), by and through the undersigned, submitting his Response in Opposition to NATIONAL CREDIT SYSTEMS, INC.'s ("Defendant") Motion for Summary Judgment ("Defendant's Motion"), and in support thereof states as follows:

**I.    INTRODUCTION**

Defendant's Motion seeks judgment in its favor in connection with Plaintiff's claims brought under the Fair Credit Reporting Act ("FCRA") and Fair Debt Collection Practices Act ("FDCPA"). Plaintiff's claims, at their core, seek redress for Defendant's conduct in reporting a fraudulent apartment debt ("subject debt") on his credit report, failing to engage in a reasonable investigation upon being notified of the fraud, and attempting to collect such fraudulent debt from Plaintiff.

1

Defendant's Motion attempts to paint Plaintiff as a bad actor who, rather than being the victim of identity theft, agreed to allow his son to rent an apartment in his name.[1] Defendant's efforts to do so represent nothing more than a meagre attempt to disparage Plaintiff and distract the Court from its own failure to conduct a reasonable investigation in connection with Plaintiff's disputes.

While Plaintiff may have filled out a lease *application*, at the direction of PRCP-Aurora, LLC d/b/a Glen at the Park Apartments managed by Priderock (collectively the "Original Creditor"), in order to assist his son in qualifying for an apartment, it is undisputed that Plaintiff never signed any lease rendering him liable for the subject debt. Defendant was notified, on numerous occasions, that the debt was fraudulent, and was explicitly told that Plaintiff did not sign the lease upon which Defendant premised Plaintiff's liability for the subject debt – a *fact* which is evident upon a cursory review of the information that was in Defendant's possession.

Notwithstanding the clarity with which Plaintiff did not sign the lease underpinning his purported liability on the subject debt, Defendant's "investigation" into Plaintiff's dispute nevertheless concluded that Plaintiff was liable for a debt in connection with a contract he clearly did not sign. Defendant's failure to consider the entirety of the information and evidence in its information when verifying the subject debt as being owed by Plaintiff illustrates the lack of reasonable investigation it conducted in response to Plaintiff's disputes. At the very least, the reasonableness of Defendant's investigation into Plaintiff's dispute presents a question of fact proper for resolution by a jury. As such, summary judgment should be not be granted to Defendant in connection with Plaintiff's FCRA claims.

---

[1] Defendant's suggestion that this case is appropriate for an award of fees in Defendant's favor is, at best, meritless.

Further, given Plaintiff's lack of obligation on the subject debt – a fact which Defendant was made aware of on numerous occasions – and Defendant's continued in its efforts to collect the subject debt from Plaintiff, demonstrate its violations of the FDCPA. As such, summary judgment in favor of Defendant on Plaintiff's FDCPA claims would be similarly inappropriate.

Therefore, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

## II. STATEMENT OF MATERIAL FACTS

### a. Responses to Defendant's Material Facts

1. Undisputed.

2. Disputed. Plaintiff did not sign the lease. The lease was not signed in Plaintiff's name. The signature on the lease was someone who was not Plaintiff, it does not match the signature on the lease application, and Plaintiff did not give his son permission to sign anything on Plaintiff's behalf. *Compare,* Defendant's Exhibit ("Def. Exh.") A-4 at p. 7, *with* Def. Exh. A-3 at p. 2; *see also* Plaintiff's Exhibit ("Pla. Exh.") A, Plaintiff's Deposition Transcript, at 22:18-25, 23:1-2. Furthermore, the signature of the "resident" on the lease is dated January 1, 2017, *before* Plaintiff filled out any lease application in connection with the underlying lease transaction. Def. Exh. A-4 at p.7; Def. Exh. A-3 at p. 1.

3. Undisputed though immaterial.

4. Undisputed.

5. Defendant has failed to comply with the Court's rules requiring simple, declarative sentences that are separately numbered and paragraphed, instead providing a paragraph of various facts and legal conclusions, making it difficult for Plaintiff to meaningfully respond. Nevertheless, the numerous facts outlined in Defendant's paragraph are undisputed.

6. See *id.,* nevertheless, undisputed.

7. See *id.,* nevertheless, undisputed.

8. It is disputed that Plaintiff's disputes were limited to "identity theft." Plaintiff's first dispute through ACDV on or about May 6, 2019 identified fraudulent charges and was not limited to identity theft. Def.'s SOMF ¶ 12. Plaintiff's direct dispute with Defendant via phone call on August 12, 2020 did not state identity theft, and instead generally referenced fraud. Def's SOMF ¶ 13, Def. Exh. A-1 pp. 1-2 ("this is fraud"). Plaintiff's dispute on February 7, 2022 included a police report, which illustrated that Plaintiff did not sign the lease. Def.'s SOMF ¶ 15; Def. Exh. A-6 at p. 5.

9. Defendant's "facts" asserted here are largely legal conclusions. Nevertheless, it is disputed that the issue presented by Plaintiff's disputes constituted a "legal" dispute outside the parameters of the FCRA. The contract was not signed by Plaintiff, and any lease application upon which Defendant premised Plaintiff's liability was executed after the "resident's" signature on the lease. *See* Pla.'s RSOMF at ¶ 2. A reasonable investigation into the *facts* illustrated by Plaintiff's disputes, evident on the face of the documents upon which Defendant relied in determining Plaintiff to be liable for the subject debt, would have led to the conclusion that Plaintiff did not sign the lease and was not obligated thereon, and it was therefore not a legal dispute. *Id.* It is further disputed that Plaintiff authorized any signing of the lease on Plaintiff's behalf, as he testified that he did not authorize his son to sign the lease in this manner. Pla.'s Exh. A at 22:25; 23:1-2.

10. It is disputed that Defendant would request deletion of the tradeline if sufficient information demonstrating fraud were produced. Plaintiff did so in his February 7, 2022 dispute where he provided a police report putting Defendant on notice that he did not sign the lease. Def. Exh. A-6 at p. 5. The signature on the lease does not match the signature on the lease application,

and the lease application followed the signature on the lease – *facts* which are evident on the face of such documents. *See* Pla.'s RSOMF at ¶ 2.

11. *See* Pla.'s RSOMF at ¶ 5, nevertheless, undisputed.

12. *See id.,* nevertheless, undisputed.

13. *See id.,* nevertheless, undisputed.

14. *See id.,* nevertheless, undisputed.

15. Disputed. It is disputed that Defendant "reviewed the documents compared to the Original Creditor's documents" in connection with the February 7, 2022 dispute. There is no indication in the account notes provided that the documents themselves were reviewed. Def. Exh. A-1 at p. 2 ("I reviewed name, address, ssn/dob, account information, checked for accuracy and matching information"). Plaintiff's dispute explicitly stated that he did not sign the lease, Def. Exh. A-6 at p. 5, yet there is no indication that Defendant compared the signature on the lease to the signature on the lease application or police report submitted. Def. Exh. A-1 at p.2; Def.'s SOMF ¶ 15. Had Defendant reasonably investigated the documents in connection with Plaintiff's dispute, and meaningfully considered the nature of Plaintiff's dispute, the discrepancy in the signatures would have been clear, leading to the conclusion that Plaintiff never signed the document establishing his liability for the subject debt. *Compare* Def. Exh. A-4 at p. 7, *with* Def. Exh. A-3 at p. 2 & Def. Exh. A-6 at p.5.

16. Disputed. The debt is not valid as Plaintiff did not sign the lease, a *fact* which would have been evident upon a reasonable review of the documents and information in Defendant's possession. *Id.* Although constituting a legal conclusion, signing a lease *application* does not render one liable for the *lease* purportedly executed pursuant to that application.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex,* 446 U.S. at 325). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works,* 36 F.3d at 1517.

## IV. ARGUMENT

### A. Regardless of whether Plaintiff was the victim of identity theft, Plaintiff was not, and is not, liable for the subject debt.

Defendant's Motion first asserts that, because Plaintiff was not the victim of identity theft, his claims fail. That is simply not the case. The record reflects that Plaintiff did not sign the lease which purportedly justified Defendant's collection efforts and reporting of the subject debt, that Defendant was made aware of this fact, yet nevertheless sought to stick Plaintiff with the entirety of the debt in connection with a lease that Plaintiff did not sign. Regardless of whether Plaintiff was subject to theft of his identity, it remains the case that Plaintiff was fraudulently stuck with the entire balance of a debt on which he had no obligation.

Plaintiff does not dispute that he signed the lease application, or that he did so on behalf of his son thinking that it would help his son qualify for an apartment. *However,* Defendant's

suggestion that Plaintiff "intended to be liable on the lease" – for any amount of time – is without merit and misrepresents the deposition testimony provided in this matter.

At Plaintiff's deposition, Defendant presented him with a copy of the "Application for Residency." Def. Exh. B, 7:17-20. In connection with the *application,* Plaintiff testified that he was told by the Original Creditor that by signing that document, it would help his son get an apartment. *Id.* at 8:4-9. Plaintiff further testified that the Original Creditor said he can sign *the lease application,* and within 6 months, his son would be on his own. *Id.* at 8:23-25, 9:1. Aside from Defendant's counsel deceptively referring to the lease application put before Plaintiff as the "lease" – *id.* at 8:20-22 – there is no testimony that Plaintiff was agreeing to be bound by any lease. Instead, Plaintiff was led to believe that his signature on the lease *application* would help his son, and that he would ultimately not be liable for any of the rental payments said to be owed by his son.

Conveniently omitted from Defendant's Motion and its articulation of the material facts of this case is Plaintiff's testimony regarding the actual lease. Plaintiff was not presented with the actual lease whenever he signed or filled out the lease application, or at any other time. Pla. Exh. A, 21:2-5. Further, Plaintiff testified that the signature on the lease was not his and that he did not give his son permission to sign the lease on his behalf. *Id.* at 22:2-4, 22:18-25, 23:1-2. Plaintiff's assent to the lease was never obtained by anyone.

Construing these facts in a light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, it is clear that Plaintiff was the victim of fraud and subjected to unauthorized charges – regardless of whether it was "identity theft." The Original Creditor seemingly misrepresented to Plaintiff the nature of what he was agreeing to. The Original Creditor then seemingly took Plaintiff's information, inputted this information into the lease, and

considered Plaintiff to be liable for the terms of the lease despite Plaintiff never seeing, signing, or otherwise agreeing to the terms of the lease he never saw nor signed. Bolstering this view of the facts is the idea that the signature on the lease was seemingly provided *before* Plaintiff ever filled out the lease application. Def. Exh. A-4 at p.7; Def. Exh. A-3 at p. 1.

Defendant's efforts to boil Plaintiff's complaints and disputes regarding the debt to identity theft generally fails to consider the fraudulent nature of the underlying circumstances – circumstances which were clearly referred to in Plaintiff's multiple disputes. Pla.'s RSOMF at ¶ 8. The *fact* that Plaintiff did not sign the lease which purportedly justified his liability on the subject debt was evident on the face of the documents in Defendant's possession.

Reporting a debt that Plaintiff does not owe clearly represents an inaccurate reporting. Therefore, because Defendant reported Plaintiff as being liable on a debt for which he was clearly never liable, and attempted to collect such debt from Plaintiff, Plaintiff's claims under the FCRA and FDCPA do not fail merely because Plaintiff was subjected to general fraud, rather than identity theft.

**B. Defendant's investigation into Plaintiff's February 7, 2022 dispute was not reasonable, and Plaintiff's lack of liability on the subject debt was within Defendant's purview to determine.**

Defendant's Motion goes on to, essentially, make two related arguments in support of its request for summary judgment on Plaintiff's FCRA claims. First, Defendant believes Plaintiff's claims fail because it conducted a reasonable investigation into Plaintiff's multiple disputes. Second, the only inaccuracy was a disputed legal question, rather than one of fact, and would not be within Defendant's purview to determine. Defendant's arguments are unavailing and do not counsel in favor of granting summary judgment in Defendant's favor on Plaintiff's FCRA claims.

    a. *Defendant failed to conduct a reasonable investigation in connection with Plaintiff's dispute received on February 7, 2022.*

8

Under 15 U.S.C. § 1681s-2(b), when a CRA notifies an information furnisher of a dispute, the furnisher must take the following steps:

> (1) Investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate.

*Maiteki v. Marten Transp. Ltd.,* 828 F.3d 1272, 1275 (10th Cir. 2016) (citing *Llewellyn v. Allstate Home Loans, Inc.,* 711 F.3d 1173, 1178 (10th Cir. 2013)). "[T]he investigation an information furnisher undertakes must be a reasonable one." *Id.* (quoting *Boggio v. USAA Fed. Sav. Bank,* 696 F.3d 611, 616 (6th Cir. 2012)).

"A 'reasonable' investigation 'is one that a reasonably prudent person would undertake under the circumstances.'" *Id.* (quoting *Seamans v. Temple Univ.,* 744 F.3d 853, 864 (3d Cir. 2014)). "[H]ow thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute." *Id.* (citing *Boggio,* 696 F.3d at 617)). "'[T]he reasonableness of the investigation is to be determined by an objective standard,' and '[t]he burden of showing the investigation was unreasonable is on the plaintiff.'" *Id.* "'Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question.'" *Id.* (quoting *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005)).

Examining the factual record in this matter, in a light most favorable to Plaintiff, and drawing all reasonable inferences therefrom in Plaintiff's favor, at the very least the question of whether Defendant's investigation was reasonable is a question of fact that must be reserved for

9

trial. Preceding the February 7, 2022 dispute, Defendant was put on notice, multiple times, of the fraudulent nature of the account being reported. Def.'s SOMF ¶ 12-14. Then, in connection with the February 7, 2022 dispute, Plaintiff provided the relevant credit reporting agency, who provided to Defendant, the documentation Defendant had requested in connection with Plaintiff's prior disputes - which explicitly notified Defendant that Plaintiff did not sign the contract which Defendant relied upon when determining that Plaintiff owed the subject debt. Def. Exh. A-6 at p. 5.

A reasonably prudent person, upon being put on notice that Plaintiff did not sign the lease at issue, would have compared the signature on the *lease* to other signatures available. Defendant clearly failed to do so, as this comparison would lead to the inescapable conclusion that Plaintiff did not sign the lease, and thus never agreed to be bound by its terms. As noted above, the Tenth Circuit has noted how the thoroughness required for a reasonable investigation depends on the nature of the information provided. *Maiteki,* 828 F.3d at 1275. Defendant was provided more than sufficient evidence through Plaintiff's dispute, and had in its possession more than sufficient evidence given the documents it used to justify its reporting, to determine that Plaintiff did not sign the lease. Defendant thus should have, given its duties as a furnisher under the FCRA, thoroughly investigated the lease and relevant signatures, determined that Plaintiff did not sign the lease, and thus deleted the information from Plaintiff's credit report. It plainly failed to do so.

Further demonstrating the above is that Defendant *did* compare the handwriting and signatures when engaging in its purportedly "reasonable" investigation. However, its handwriting and signature comparison was *unreasonably* limited to the lease application, rather than the lease that was the subject of Plaintiff's dispute. Comparing the signature on the lease application to that of the police report provided does not meaningfully address the concern raised in Plaintiff's dispute

– i.e., that he did not sign the *lease*. Given the plain nature of Plaintiff's dispute, Defendant's focus on the lease application does not constitute the requisite thoroughness that would have been required based on the information provided to Defendant. Defendant's conduct, when viewed in a light most favorable to Plaintiff, demonstrates that Defendant seemingly ignored the actual nature of Plaintiff's dispute and engaged in an unreasonably limited review of the information provided when verifying the accuracy of the subject debt in response to Plaintiff's February 7, 2022.[2]

Therefore, when viewing the record in a light most favorable to Plaintiff and construing all reasonable inferences therefrom in Plaintiff's favor, the Court should determine, at the very least, that the reasonableness of Defendant's investigation in response to Plaintiff's February 7, 2022 dispute presents a question of fact for a jury to resolve. Defendant's procedures, which involved selectively comparing signatures that supported its reporting (at the dereliction of clear information and evidence to the contrary) are not "beyond question."[3] Any reasonably prudent and thorough investigation, given the nature of Plaintiff's dispute, would have counseled in favor of comparing the signatures available to the signature on the lease. Defendant's plain failure to do so underscores the unreasonable nature of its investigation in response to Plaintiff's February 7, 2022 dispute.

  b. *The inaccuracy at issue was a factual inaccuracy and the correct reporting of a consumer's liability is a duty imposed upon furnishers under the FCRA.*

---

[2] The fact that the date of the signature on the lease *precedes* the date of Plaintiff's signature on the lease application, *see* Pla.s' RSOMF ¶ 2, further illustrates not only the unreasonableness of Defendant's investigation, but extent to which Defendant seemingly ignored Plaintiff's dispute. Had Defendant engaged in *any* review of the actual lease and the signature thereon, in conjunction with the lease application, it would have realized that there was no way the lease application, filled out after the lease was signed in a manner purportedly binding Plaintiff, could reasonably support the accuracy of its reporting. As such, the timing of the execution of the relevant documents should have further illustrated the inaccuracy of Defendant's reporting of the subject debt.

[3] A simple question remains – why didn't Defendant compare the signature on the lease to that included in the police report and lease application? Defendant's Motion fails to meaningfully answer this question.

Contrary to Defendant's assertions, Plaintiff's claim of the inaccuracy of Defendant's reporting of the subject debt is not "tethered to a legal dispute." Instead, it is a factual inaccuracy that could, and should, have been addressed by Defendant.

Generally speaking, courts within the 10th Circuit, when considering whether an asserted inaccuracy is factual or legal in nature *in relation to a credit reporting agency's* investigatory duties, have provided the following guidance:

> With regards to the distinction between legal and factual disputes for purposes of the FCRA, the central question is whether the alleged inaccuracy turns on applying law to facts or simply examining the facts.

*Adkins v. Sallie Mae Bank.,* 2022 U.S. Dist. LEXIS 205313, at *24 (D. Kan. Nov. 10, 2022). Applying this central question to the instant matter, the Court should determine that the inaccuracy at issue did not require the application of law to facts, and instead simply required examining the facts at issue. It is a matter of fact that Plaintiff did not sign the lease agreement, which would have been a necessary component to render Plaintiff liable for the subject debt. Plaintiff notified Defendant of this fact, yet Defendant failed to reasonably investigate the dispute. Defendant's authority suggesting that the dispute was one of a legal nature fails to consider what actually happened in this case, and is premised entirely on distinguishable cases involving plainly legal, rather than factual, disputes.[4]

Furthermore, it is clear that the duty to ensure liability on a debt is properly reported differs significantly between credit reporting agencies and furnishers. The court in *Adkins,* upon considering the *credit reporting agency's* motion to dismiss, noted how the furnisher at issue (who did not seek dismissal) "stands in a far better position to make a thorough investigation of a

---

[4] Defendant's Motion similarly fails to cite to a *single* case from within the 10th Circuit when setting forth its arguments as to the duties of furnishers with regard to how liability of a debt is reported.

disputed debt" than the credit reporting agency. *Id.* at *19 (citing *Denan v. Trans Union LLC,* 959 F.3d 290, 295 (7th Cir. 2020)). As noted in *Denan,* and as the relevant regulations applicable to the FCRA demonstrate, "'[a]ccuracy' for furnishers . . . means information that 'correctly [r]eflects . . . liability for the account.'" *Denan,* 959 F.3d at 295 (citing 12 C.F.R. § 1022.41(a)). "Neither the FCRA nor its implementing regulations impose a comparable duty upon consumer reporting agencies." *Id.*

In *Denan,* the plaintiffs argued that the credit reporting agency, rather than the furnisher, had a duty to verify the debt liability. *Id.* In rejecting this argument, the court noted how such argument attempted "to graft responsibilities of data furnishers and tribunals onto a consumer reporting agency. **Only furnishers are tasked with accurately reporting liability.**" *Id.* (emphasis added).

As *Denan, Adkins,* and the relevant regulations demonstrate, the FCRA imposes upon furnishers an obligation to ensure that liability for a debt is accurately reported. Defendant plainly failed to uphold this obligation despite the clarity with which Plaintiff's lack of obligation on the subject debt could, and should, have been determined based on the facts and information available to Defendant. *See also, Shipley v. Equifax Info. Servs., LLC,* 2022 U.S. Dist. LEXIS 65969, at *17-19 (N.D. Ga. Jan. 25, 2022) (noting how: § 1681s-2(b) "requires some degree of careful inquiry by furnishers of information," that when "a furnisher has access to dispute-related information beyond the information provided by the CRA, it will often be reasonable for the furnisher to review that additional information and conduct its investigation accordingly," ultimately concluding that the furnisher's investigation, which included reviewing the lease application. *contract for*

*residenc*e, and final account statement, was reasonable because "all of the information . . . was consistent across these records.""").[5]

As such, Defendant's belief that Plaintiff's "legal liability under the Lease with Glen Park" was a purely legal issue that Defendant could not determine is without merit. Defendant had a duty to ensure that Plaintiff's liability for the subject debt was accurately reported, which it failed to do, despite having more than enough information to make this determination. Therefore, the Court should find that Defendant's investigation was unreasonable and that Defendant did not sufficiently investigate Plaintiff's liability on the subject debt when verifying Plaintiff's liability on the subject debt following Plaintiff's February 7, 2022 dispute.

Thus, the Court should deny Defendant's Motion as to Plaintiff's FCRA claims. Defendant had a duty to verify Plaintiff's liability on the subject debt, and its investigation in response to Plaintiff's dispute was entirely unreasonable and completely ignored the glaring reality that Plaintiff never signed the lease upon which Defendant premised Plaintiff's liability for the subject debt.

**C. Plaintiff's FDCPA claims are not subject to summary judgment in Defendant's favor.**

Defendant's attack on Plaintiff's FDCPA claims are largely a rehash of its arguments in connection with Plaintiff's FCRA claims. For much of the same reason detailed above, the Court should deny Defendant's Motion with respect to Plaintiff's FDCPA claims.

Of the three elements for Plaintiff's FDCPA claims identified in Defendant's Motion, Defendant focuses on the third (whether Defendant violated the FDCPA), but did not concede the

---

[5] Unlike the situation presented in *Shipley,* the contrasting signatures at issue in the instant matter demonstrate the lack of consistency between the records that should have been reviewed by Defendant, in turn illustrating the unreasonable nature of Defendant's investigation.

first (whether Plaintiff was subject to collection activity arising from consumer debt). Each of these elements are satisfied.

The record reflects that Plaintiff did not sign the lease underpinning his purported obligation on the subject debt. As such, Plaintiff did not owe the subject debt. Plaintiff's lack of liability on the subject debt would have been clear had Defendant meaningfully investigated and responded to Plaintiff's dispute, which it failed to do. Instead, Defendant continued attempting to collect the subject debt from Plaintiff through deceptive representations and unfair means, including its verifying and continued reporting of the subject debt following Plaintiff's February 7, 2022 dispute – which constitutes collection activity under the FDCPA. *See e.g., Williams v. LVNV Funding, LLC,* 2014 U.S. Dist. LEXIS 112882, at * 13 (D. Colo. Aug. 14, 2014) (collecting and analyzing cases in support of the proposition that credit reporting constitutes collection activity and communications attempting to collect debts covered by the FDCPA). As such, Defendant subjected Plaintiff to collection activity and, as discussed below, did so in a manner that violates the FDCPA.

Attempts to collect a debt that is not owed by a consumer are sufficient to survive summary judgment in connection with FDCPA claims. *See e.g., Edwards v. BC Servs.,* 2019 U.S. Dist. LEXIS 214113, at *26 (D. Colo. Dec. 10, 2019) (denying summary judgment on § 1692e *et seq.* claims when the defendant attempted to collect upon a debt that was not owed by the plaintiff). In *Brown v. SWC Grp. LP,* 2019 U.S. Dist. LEXIS 44457 (N.D. Ga. Jan. 10, 2019), the court was faced with a situation similar to the instant matter. In *Brown,* much like the instant matter, the account at issue was procured via fraud and evidence that Plaintiff did not owe the debt was unrebutted. *Id.* at *31. Defendant cannot suggest that Plaintiff was liable on the subject debt because he clearly did not sign the lease justifying his purported liability on the subject debt.

15

Further, the defendant in *Brown* was made aware that the debt was not owed, much like Defendant in the case at bar, yet continued to attempt to collect the subject debt. *Id.* at *32. As a result, the court found that it was undisputed "that [the defendant] attempted to collect a debt from Plaintiff" even after it was "explained that the debt was fraudulent." *Id.* *33. Based on this, the court concluded that the plaintiff sufficiently established that the defendant violated the FDCPA by making a false statement about the debt, in violation of both §§ 1692e(2)(A) and e(10). *Id.* at *33-34 ("the false representation was that Plaintiff owed the . . . debt, and [the defendant] used that false representation in an attempt to collect the debt from [the plaintiff]"). The same result is warranted here.

Defendant's reliance on the *Ducrest v. Alco Collections* case in to suggest that it did not violate the FDCPA with respect to Plaintiff is entirely without merit. Because the FDCPA is a strict liability statute, a false representation – i.e., that a consumer owes a debt when they do not – constitutes a violation of the statute regardless of whether the representation was intentional or knowing. *Santacruz v. Standley & Assocs., LLC,* 2011 U.S. Dist. LEXIS 27885, at *8 (D. Colo. Mar. 17, 2011). So, notwithstanding whether Defendant had any duty to investigate Plaintiff's liability on the subject debt, because the record reflects that Plaintiff was not liable for the debt, Defendant's making of a false representation in connection with its effort to collect a debt subjects it to liability under the FDCPA. Defendant's argument that it had no independent duty to investigate Plaintiff's lack of liability on the subject debt would eviscerate the strict liability nature of the FDCPA.

Furthermore, this Court has examined arguments that a debt collector had no independent duty to investigate the accuracy of information provided by a creditor, and found that such argument does not suggest the absence of a FDCPA violation, but instead is more properly asserted

16

in connection with a claim of the bona fide error defense – an argument and showing which Defendant does not even attempt to make in its Motion. *See, Edwards,* 2019 U.S. Dist. LEXIS 214113, at *13- ("Defendant argues that it cannot be held liable under the FDCPA for seeking to collect the Subject Debt even though Plaintiff did not owe it, because Defendant reasonably relied upon information provided to it by [the original creditor] and it had no duty to conduct an independent investigation," finding that such argument fell within the bona fide error defense and did not, in itself, excuse any false representations regarding the plaintiff's liability on a particular debt). So, while the FDCPA may not impose any explicit duty on a debt collector to conduct an independent investigation, in the event a debt collector wants to avoid strict liability for false representations, it must avail itself of the bona fide error defense, which Defendant has not done.

Therefore, in light of the foregoing, the Court should deny Defendant's Motion to the extent it seeks summary judgment in its favor in connection with Plaintiff's FDCPA claims. Defendant engaged in collection activity against Plaintiff and in doing so utilized false and deceptive representations.

## V. **CONCLUSION**

In light of the above, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion in its entirety. It is undisputed that Plaintiff did not sign the lease upon which Defendant premised Plaintiff's liability for the subject debt. Despite being made aware of this fact, Defendant continued reporting the subject debt on Plaintiff's credit report without reasonably investigating Plaintiff's dispute, in violation of the FCRA, and in so doing engaged in collection activity utilizing false representations, in violation of the FDCPA.

Dated: June 7, 2023                                            Respectfully submitted,

                                                               */s/ Eric D. Coleman*

Eric D. Coleman, Esq. # 6326734
Admitted in the District of Colorado
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 575-8181 x113
Fax: (630) 575-8188
ecoleman@sulaimanlaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

       I hereby certify that on June 7, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Colorado by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Eric D. Coleman*

Eric D. Coleman
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 575-8181 x105
Fax: (630) 575-8188
ecoleman@sulaimanlaw.com

*Counsel for Plaintiff*